[Civ. No. 27810. Second Dist., Div. Two. May 25, 1964.]

COUNTY OF LOS ANGELES, Plaintiff and Respondent, v. THE STUYVESANT INSURANCE COMPANY, Defendant and Appellant.

---

*Retired Justice of the District Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

Brody, Grayson & Green, Samuel S. Brody and Joseph T. Vodnoy for Defendant and Appellant.

Harold W. Kennedy, County Counsel, and Martin E. Weekes, Deputy County Counsel, for Plaintiff and Respondent.

ROTH, J.—On July 21, 1962, Frank Taylor, an authorized subagent of Abe Phillips, general agent and attorney in fact for Stuyvesant Insurance Company (Stuyvesant), executed a

bail bond in the amount of $10,500 on Harry Sidmore, defendant in *People* v. *Sidmore*, Los Angeles Superior Court, No. 196892. The bond bore one signature: that of Phillips. On September 19, 1962, during a hearing on motion to continue the criminal trial, the following exchange took place:

"THE COURT: What is the reason for causing the disturbance in here?

"MR. PHILLIPS: I put him under arrest. . . .

"THE COURT: For what?

"MR. PHILLIPS: I am the general agent he jumped bail on for $4,500. . . . I went to see Frank Taylor who is one of my agents and I demanded to see this man's application. . . .

"THE COURT: Do you have a warrant for his arrest?

"MR. PHILLIPS: I have a certified copy of the bond. I would like to put him back on bail right now and put him back in your custody right now, your Honor. I am the bail bondsman.

"..............................................

"THE COURT: Well, I would think that he [Phillips] would have a right to withdraw his bond if that is what he wishes to do.

"..............................................

"MR. DUNCAN [counsel for defendant]; But, it's not his bond.

"THE COURT: If it's not his bond, he hasn't anything to do with it.

"MR. TAYLOR: It's the Stuyvesant Insurance Company. I represent them in the State of California. I posted the bond, your Honor.

"MR. DUNCAN: Your Honor, Mr. Taylor; Frank Taylor here—I have a lapse of memory; Mr. Frank Taylor here is the bondsman that wrote the bond. Mr. Taylor is satisfied with Mr. Sidmore. It's Mr. Phillips that four years ago wrote the bond that has been forfeited.

"..............................................

"MR. PHILLIPS: I am the general agent. I want to surrender him to you . . . I have a right to.

"..............................................

"THE COURT: The company will have to revoke the bond.

"MR. PHILLIPS: I am the company.

"THE COURT: I have had enough. I take it you are just another agent?

"MR. PHILLIPS: General agent.

"THE COURT: Not an officer in the office?

"MR. PHILLIPS: I am an attorney of fact, your Honor, and a general agent for the Stuyvesant Insurance Company.

"THE COURT: I can't accept the surrender under these circumstances. I have no written authorization."

Respondent in its brief states its position in respect of Mr. Abe Phillips as follows: "During the entire proceeding on September 19, 1962, MR. ABE PHILLIPS represented to the Court that he was the general agent of the Stuyvesant Insurance Company. MR. ABE PHILLIPS did not present, and he has not subsequently presented any document which would indicate the extent of his authority as such authority was conferred upon him, by the Stuyvesant Insurance Company."

Sidmore failed to appear on November 21, 1962, the time set for the criminal trial, and bail was forfeited. On March 20, 1963, respondent obtained a summary judgment pursuant to Penal Code section 1306. On March 26, 1963, appellant moved to vacate the summary judgment. This appeal is from the denial of that motion.

The record shows that Phillips was the authorized agent for Stuyvesant, empowered to arrest and surrender Sidmore and that he did everything within his power to surrender the defendant to the court. ▮ The certified copy of the bond which Phillips presented to the court designates Phillips as attorney in fact for Stuyvesant. As such he was more than a mere agent. (*Porter* v. *Hermann,* 8 Cal. 619, 625.) He was empowered to act in the place of Stuyvesant as to all acts necessary and proper for the transaction of its business, not of a legal character. (*Massachusetts Bonding & Ins. Co.* v. *Bankers' Surety Co.,* 96 Ind.App. 250 [179 N.E. 329, 334].) The record excerpted shows without contradiction, except for the statement of Taylor who was the broker who wrote the bond, that he (Taylor) did not care to withdraw it, that Phillips was the general agent, attorney in fact and the authorized representative of Stuyvesant in California, and that Taylor was his subagent.

▮ Appellant argues that the effect of the trial court's refusal to accept the surrender detailed above, exonerated the bond by operation of law, thus removing the trial court's jurisdiction to enter the forfeiture and to render summary judgment. We agree.

The bail's right to arrest the principal is covered by section 1301: "For the purpose of surrendering the defendant, the bail, at any time before they are finally discharged, and

at any place within the State, may arrest him, or by a written authority indorse [*sic*] on a certified copy of the undertaking or a certified copy of the certificate of deposit, may empower any person of suitable age and discretion to do so.''

Penal Code, section 1300 provides: ''At any time before the forfeiture of their undertaking, ... the bail ... may surrender the defendant in [his] exoneration ... in the following manner:

1. a certified copy of the undertaking of the bail, ... must be delivered to the officer who must detain the defendant in his custody thereon as upon a commitment, and by a certificate in writing acknowledge the surrender.''

The provisions of sections 1301 and 1300 are clear and unambiguous.

▪ Under section 1301 a written authorization is required for the bail to empower another person to arrest a defendant for the purposes of surrendering him. Under section 1300 however, a surrender of the defendant may be effectuated by the bail by the presentation of a certified copy of the bond to the officer who must by mandate of the statute detain the defendant. It appears to us that both the written authorization to arrest and the actual surrender were present in this case.

It has been held in this jurisdiction that a surrender and acceptance in open court even though all formal requirements are not meticulously met, are sufficient to exonerate the sureties on a bail bond though the statute specifically provides that a surrender shall be made to a particular officer. (*Rodman* v. *Superior Court* 13 Cal.2d 262, 266 [89 P.2d 109]; 8 Am.Jur.2d 856.)

In *Rodman* the bail attempted to surrender in open court after a conviction of the defendant, immediately prior to sentence. The court refused to accept such surrender, and among other things, assessed a fine against defendant and ordered it paid out of the security which had been deposited by the bail and provided in its order that the excess of such security, if any, be paid to the bail.

The court said at pages 265, 266: ''In that connection, it first may be not inappropriate to again suggest . . . that in the administration of justice, substance, rather than mere form, should be regarded. . . . Other than that the request or the motion should have been preceded by an offer on the part of the bondsman to surrender the defendant into court, no

suggestion is here made as to the 'form' which should have been observed. . . . Besides, it would seem apparent that, other than the implied requirements which may be indicated by the provisions of section 1300 of the Penal Code, had any particular 'form' ever been prescribed, . . . a fair regard for the rights of the applicant for 'exoneration' should have prompted an indication of its existence, together with the giving of a reasonable opportunity to the bondsman to amend his application, or otherwise to avail himself of the use of the required procedure. . . .''

The courts of this state have long recognized the general principle, though the issue has never been squarely decided, that ''While the giving of bail . . . restores the accused to his freedom, technically he is considered as having been delivered into the custody of his sureties, who are liable for his appearance in accordance with the terms of their undertaking [citations], but performance by them of the condition of the undertaking may be rendered impossible or excused by an act of God or of the obligee or of the law. In such cases the sureties are exonerated.'' (*County of Los Angeles* v. *Maga,* 97 Cal.App. 688, 691 [276 P. 352].) This principle is consistent with the contractual nature of the bail relationship, the obligations of which are controlled by the statutes specifically applicable thereto. (Civ. Code, § 2781; see *People* v. *Stuyvesant Insurance Co.,* 216 Cal.App.2d 380, 382 [31 Cal.Rptr. 208].)

 Penal Code, section 1305 provides: ''If, without sufficient excuse, the defendant neglects to appear for arraignment or for trial . . . the undertaking of bail, . . . must thereupon be declared forfeited. But if at any time within 90 days after such entry . . . the defendant and his bail appear, and satisfactorily excuse the defendant's neglect or show to the satisfaction of the court that the absence of the defendant was not with the connivance of the bail, the court may direct the forfeiture . . . to be discharged upon such terms as may be just. If within 90 days after such entry . . . it be made to appear to the satisfaction of the court that the defendant is dead or is physically unable, by reason of illness or insanity, or by reason of detention by civil or military authorities, to appear in court at any time during said 90 days, and that the absence of the defendant was not with the connivance of the bail, the court may direct the forfeiture . . . to be discharged . . . .''

The rule set out in section 1305 has no application here.

We think the facts as outlined demonstrate a complete surrender by the bail of the defendant and we think the court should have accepted it.

The trial court which made the order denying the motion to vacate the judgment of forfeiture said: "I agree that the trial judge should have accepted the defendant into custody and should have then exonerated the bail. . . . I believe from reading the transcript that he may well have been confused as to which individual actually represented the company. I do think it is quite clear he was in error. However, I do think that the defendant ... had several remedies .... I think a Writ of Mandate would have been proper ... and I think there possibly could have been an appeal taken at that time. . . ."

Respondent argues that even if the above is true, the appellant was not excused from the limitative effect of section 1305, and having not complied therewith, cannot now complain. As authority for this contention it cites *People* v. *Hodges,* 205 Cal. 476 [271 P. 897].

However, when the order forfeiting the bail is not merely erroneous but void, the proceedings to vacate such order provided by Penal Code, section 1305 by its terms does not apply to, nor limit, the relief sought. "An order refusing to set aside forfeiture of bail is appealable." (*People* v. *Doe,* 172 Cal.App.2d Supp. 812, 814, 817 [342 P.2d 533].) The void order may be attacked at any time. (*Jellen* v. *O'Brien,* 89 Cal.App. 505, 508 [264 P. 1115]; *Olivera* v. *Grace,* 19 Cal.2d 570, 574 [122 P.2d 564, 140 A.L.R. 1328].)

In *Hodges,* it was held that appellant failed to make timely complaint of the improper forfeiture of the bond. Appellant in that case argued that the forfeiture was erroneously entered without a formal written notice, not that the order itself was void. The rule in *Hodges* has no application to a void forfeiture.

We feel that the bondsman in this case did everything required to make a complete surrender of the defendant. If there was a failure in any respect and the only suggestion is that there was a lack of written authorization (which we think was present) it should have been pointed out by the trial judge.

In *Miller* v. *Commonwealth,* 192 Ky. 709 [234 S.W. 307, 308], the court held: "In the contract between the sureties and the state, there is also an implied covenant on the part of the latter that it will not interfere with the right of

the sureties to retain the principal in their custody, nor with their right to discharge themselves as bail for him, by taking him into actual custody and surrendering him to the court ... Hence the sureties are excused from fulfilling the requirements of the bond if they are prevented by the act of the law, or by the act of the obligee, the state, through its constituted authorities.'' In *Miller* the court allowed defendant to travel outside the state until his case was called for trial. In *State* v. *Liakas*, 165 Neb. 503 [86 N.W. 2d 373, 377], the court held that an extradition order issued by the governor which handed the defendant over to the authorities of another state, was an act of the obligee which exonerated the bond.

Manifestly, the refusal of the court to accept the surrender of Sidmore, when it was apparent that Phillips was authorized to effect such surrender, was a breach of the above mentioned covenant and within the rule enunciated in *Maga* and *Miller, supra*.

If there were any formality omitted by the bail at the time of the proffered surrender which the trial court felt should have been complied with to effectuate what in its opinion would constitute a complete surrender, it should have been pointed out.

We echo the court in *Rodman*. It says at page 266: ''It is manifest that to permit a mere failure on the part of the bondsman to perform that which either might or would have been readily done by him, or that which, in substance, might have been regarded as an idle act, to defeat his asserted rights in the premises, would give rise to a sad commentary on the vaunted procedure respecting the administration of substantial justice. At any rate, this court cannot knowingly lend its official sanction in such a cause.''

The order denying the motion is reversed.

Herndon, Acting P. J., and Ashburn, J.,* concurred.

A petition for a rehearing was denied June 18, 1964, and respondent's petition for a hearing by the Supreme Court was denied July 22, 1964.

---

*Retired Justice of the District Court of Appeal sitting under assignment by the Chairman of the Judicial Council.